2009 ND 182

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Thomas Paul NESS, Defendant and Appellant.**

No. 20090046.

Supreme Court of North Dakota.

Oct. 15, 2009.

Bryan David Denham, Bismarck, N.D., for plaintiff and appellee.

Paul Henry Myerchin, Bismarck, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1] Thomas Ness appeals from a district court order deferring imposition of sentence, entered after a jury found him guilty of failing to immediately tag a white-tailed doe. We conclude Ness does not have standing to argue the Governor's deer hunting proclamation is unconstitutionally vague, there is sufficient evidence to support Ness's conviction, the district court did not err in refusing to give Ness's requested jury instructions, Ness's confrontation rights were not violated, and the court did not abuse its discretion in refusing to grant Ness's motion for a mistrial. We affirm.

I

[¶ 2] Ness is a licensed deer hunter and outfitter. Ness received two doe tags and one gratis tag for the 2007 deer gun hunting season. The gratis tag allowed Ness to shoot either an antlered or antlerless deer on his property during the deer hunting season. Sometime during the deer hunting season Ness lost the two doe tags. On either November 16, 2007, or November 17, 2007, Ness called Jackie Lundstrom, a game warden with the Game and Fish Department, to ask about getting replacement tags for the two lost doe tags, but Lundstrom was unavailable and Ness left a message.

[¶ 3] On November 18, 2007, Ness went hunting on his property and killed a white-tailed doe. Ness brought the deer back to his house and began sawing its legs off in his driveway. Lundstrom arrived at Ness's residence while he was cutting up the deer. Ness told Lundstrom he called her because he wanted replacement tags for the two lost doe tags. Lundstrom saw the deer laying in the driveway and noted it was not tagged. Lundstrom directed Ness to tag the deer with his gratis tag and he complied.

[¶ 4] Lundstrom issued Ness a citation charging him with failing to immediately tag a white-tailed doe after it was killed in violation of the Governor's 2007–2008 deer hunting proclamation, a class B misdemeanor under N.D.C.C. § 20.1–08–01. During the jury trial, Lundstrom testified and on cross-examination Ness asked her about hypothetical hunting situations and whether a hunter in those circumstances would be violating the tagging requirement. Ness also attempted to use photographs of other hunters he found on a website to question Lundstrom about whether the hunters pictured had violated the tagging requirement, but the district court refused to allow Ness to use the photographs. Ness requested excuse and mistake or innocence jury instructions, but the court denied Ness's request. During jury deliberations, a juror wrote the court a note informing the court his employer may have a prior business relationship with Ness. Ness moved for a mistrial based upon the juror's disclosure, but the

court denied his motion. The jury found Ness guilty.

## II

[¶ 5] Ness argues the district court erred in failing to dismiss the citation because the tagging requirement in the Governor's 2007–2008 deer hunting proclamation is unconstitutionally vague. He contends the Governor should have been called to testify about the meaning of "immediately" in the tagging requirement because the meaning is unclear and subjective, which could result in arbitrary and discriminatory enforcement.

[¶ 6] The Governor's deer hunting proclamation has the force of law, and a violation of a provision of the proclamation is a class B misdemeanor unless a noncriminal penalty is provided in the proclamation. N.D.C.C. § 20.1–08–01. Whether a law is unconstitutional is a question of law, which is fully reviewable on appeal. *State v. Holbach*, 2009 ND 37, ¶ 23, 763 N.W.2d 761. A law is not unconstitutionally vague if: (1) the law creates minimum guidelines for the reasonable police officer, judge, or jury charged with enforcing the law, and (2) the law provides a reasonable person with adequate and fair warning of the prohibited conduct. *State v. Brown*, 2009 ND 150, ¶ 33, 771 N.W.2d 267. A law is "not unconstitutionally vague 'if the challenged language, when measured by common understanding and practice, gives adequate warning of the conduct proscribed and marks boundaries sufficiently distinct for fair administration of the law.'" *Holbach*, at ¶ 24 (quoting *In re Disciplinary Action Against McGuire*, 2004 ND 171, ¶ 19, 685 N.W.2d 748). "To have standing to raise a vagueness challenge, a litigant must almost always demonstrate that the statute in question is vague as applied to his own conduct, without regard to its potentially vague applica-

tion in other circumstances." *State v. Tibor*, 373 N.W.2d 877, 880 (N.D.1985).

[¶ 7] The Governor's 2007–2008 deer hunting proclamation includes a tagging requirement for deer hunting, and provides:

> IMMEDIATELY after an animal has been killed, the hunter must indicate the date of kill by cutting out the appropriate month and day from the tag provided with the license and attach it to the base of the antler on antlered deer or in a slit in the ear on antlerless deer as illustrated on the tag backing to prevent its removal. The tag, placed immediately upon the antler or slit in ear, shall remain with the antlers or head until March 31, 2008.

The word "immediately" is not specifically defined in the proclamation.

[¶ 8] When we interpret a statute words are given their plain, ordinary, and commonly understood meaning, unless specifically defined by statute or a contrary intention plainly appears. *In re Estate of Elken*, 2007 ND 107, ¶ 7, 735 N.W.2d 842. A court may use extrinsic aids to interpret a statute if the language is ambiguous. *State v. Wetzel*, 2008 ND 186, ¶ 4, 756 N.W.2d 775. We construe statutes to avoid constitutional infirmities. *Elken*, at ¶ 7. The term "immediately" should be given its plain, ordinary, and commonly understood meaning to interpret the tagging requirement in the Governor's proclamation.

[¶ 9] Ness contends the proclamation is unconstitutionally vague on its face and not as applied to his conduct. Ness lost two doe tags but had possession of a gratis tag. He went hunting on his land and killed a doe. He transported the deer to his house, and began sawing the legs off the deer in his driveway. Ness did not tag the deer before he transported it to his

house or before he began cutting it up in his driveway. Using the plain, ordinary, and commonly understood meaning of "immediately," under the circumstances of this case a reasonable person would know Ness's conduct violated the tagging requirement. We conclude Ness does not have standing to argue the tagging requirement is unconstitutionally vague.

### III

■ [¶ 10] Ness argues there was insufficient evidence for the jury to convict him because the State failed to present any relevant evidence to clarify the meaning of the immediate tagging requirement.

■ [¶ 11] Ness moved for dismissal under N.D.R.Crim.P. 29 at the close of the State's case-in-chief and again at the close of all evidence, preserving the sufficiency of the evidence issue for appeal. *See State v. McAvoy,* 2009 ND 130, ¶ 8, 767 N.W.2d 874. To grant a judgment of acquittal a court must find there is insufficient evidence to sustain a conviction. *State v. Maki,* 2009 ND 123, ¶ 7, 767 N.W.2d 852. On appeal, this Court reviews the evidence and all reasonable inferences in the light most favorable to the verdict, and will reverse only if no rational factfinder could have found the defendant guilty beyond a reasonable doubt. *Id.*

[¶ 12] Here, there was evidence Ness killed a white-tailed doe, transported the deer back to his home, and began sawing the legs off the deer before tagging it. Ness did not dispute that he shot the deer and did not tag it until after Lundstrom directed him to tag it using his gratis tag. Ness testified he knew he could not hunt off his land because it would have been a violation without one of the doe tags, but he thought he could hunt on his own land because he had a gratis tag that he could use on any deer he shot. He also testified he did not intend to use the gratis tag on

this deer because he wanted to use a replacement doe tag. The court instructed the jury that it may apply matters of common knowledge and science to the facts and circumstances of the case to determine Ness's guilt, which included determining whether he immediately tagged the deer. Viewing the evidence and all reasonable inferences in the light most favorable to the verdict, we conclude there is sufficient evidence to sustain the conviction.

### IV

■ [¶ 13] Ness argues the district court erred by failing to give his requested jury instructions. We review jury instructions as a whole to determine whether they fairly and adequately advise the jury of the applicable law. *State v. Haugen,* 2007 ND 195, ¶ 6, 742 N.W.2d 796. " 'A defendant is entitled to a jury instruction on a defense if there is evidence that creates a reasonable doubt about an element of the charged offense.' " *State v. Zajac,* 2009 ND 119, ¶ 12, 767 N.W.2d 825 (quoting *State v. Falconer,* 2007 ND 89, ¶ 13, 732 N.W.2d 703). We view the evidence in the light most favorable to the defendant to determine whether there is sufficient evidence to support a jury instruction. *Zajac,* at ¶ 12. A court errs if it refuses to instruct the jury on an issue that has been adequately raised. *Id.* A court, however, may refuse to give an instruction that is irrelevant or inapplicable. *Id.*

### A

■ [¶ 14] Ness contends he was entitled to a jury instruction for an affirmative defense of innocently or mistakenly failing to tag the doe within a reasonable time. The State argues Ness was not entitled to a jury instruction because this is a strict liability offense and an individual

could not innocently or mistakenly violate the tagging requirement.

[¶ 15] Failing to immediately tag a deer is a strict liability offense. *See State v. Holte*, 2001 ND 133, ¶ 10, 631 N.W.2d 595 (generally when a specific culpability requirement is not given the offense is a strict liability offense for which no proof of intent is required); *State v. Brandner*, 551 N.W.2d 284, 287 (N.D. 1996). Strict liability does not necessarily preclude affirmative defenses, but an affirmative defense will rarely apply. *Haugen*, 2007 ND 195, ¶ 9, 742 N.W.2d 796. This Court has said a defendant charged with a strict liability offense may present an affirmative defense of unwittingly violating the law. *State v. Olson*, 2003 ND 23, ¶ 11, 656 N.W.2d 650. *See also Brandner*, at 287 (defendants were charged with possession of illegal fishtraps, the defendants claimed they did not have any knowledge of the fishtraps, and the Court said an affirmative defense of unwitting and unknowing possession could apply).

[¶ 16] Ness knew he had to tag the deer immediately, he had a tag he could use in his possession, and he decided not to use the tag. Ness had a means of complying with the tagging requirement but chose not to. The evidence does not support an innocence or mistake instruction. The district court properly denied the requested jury instruction.

### B

[¶ 17] Ness also claims he was entitled to an excuse jury instruction because there was evidence his actions were necessary and appropriate. Ness claims there was evidence to support an excuse instruction, including that Game and Fish wanted to reduce the size of the deer population and that he did not start hunting until the season was half over.

[¶ 18] A defendant may be entitled to an excuse jury instruction and his conduct may be excused if there is evidence that "he believes that the facts are such that his conduct is necessary and appropriate for any of the purposes which would establish a justification or excuse under [N.D.C.C. ch. 12.1–05], even though his belief is mistaken." N.D.C.C. § 12.1–05–08. *See also State v. Nygaard*, 447 N.W.2d 267, 272 (N.D.1989). Ness argues his actions were excused because it was late in the deer hunting season, he had not had a chance to shoot any deer, and the deer population was large and needed to be reduced. Ness does not claim his conduct was necessary and appropriate for any purpose which would establish a justification or excuse recognized in N.D.C.C. ch. 12.1–05. Moreover, Ness did not have to hunt until he had replacement tags or he could have tagged the deer immediately using the gratis tag he had in his possession. There was no evidence that Ness's failure to immediately tag the deer was necessary or appropriate, and the evidence does not support an excuse instruction. We conclude the district court did not err in refusing to give the requested jury instruction.

### V

[¶ 19] Ness contends his Sixth Amendment confrontation rights were violated because the district court refused to allow him to cross-examine Lundstrom about her bias, prejudice, or ulterior motives and refused to allow him to "test" Lundstrom on the tagging requirement.

[¶ 20] Our standard of review for a claimed violation of a constitutional right is de novo. *State v. Curtis*, 2008 ND 108, ¶ 12, 750 N.W.2d 438. A defendant has a constitutional right to confront adverse witnesses. U.S. Const. amend. VI. This Court has said, " '[t]he right (to cross-

examine) is absolute and the denial of the right as to material evidence is prejudicial error requiring a new trial.'" *State v. Bartkowski*, 290 N.W.2d 218, 219 (N.D. 1980) (quoting *State v. Hilling*, 219 N.W.2d 164, 171 (N.D.1974)). We have also said, "[o]rdinarily, the complete denial of cross-examination 'would be constitutional error of the first magnitude.' There are exceptions.... The latitude and extent of cross-examination has always been held to be within the [district] court's reasonable discretion." *Bartkowski*, at 219–220 (citations omitted). The Sixth Amendment does not prevent a district court from imposing reasonable limits on a defendant's cross-examination, including excluding irrelevant evidence. *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S.Ct. 1431, 89 L.Ed.2d 674 (U.S.1986).

 [¶ 21] The opportunity to cross-examine a witness is the primary mode of safeguarding a defendant's Sixth Amendment confrontation rights, but the scope of the cross-examination is in the court's discretion. *State v. Padgett*, 410 N.W.2d 143, 147 (N.D.1987); *Bartkowski*, 290 N.W.2d at 219. The propriety of cross-examination of witnesses is largely within the district court's discretion and will not be disturbed on appeal absent a showing the court abused its discretion. *State v. Stensaker*, 2007 ND 6, ¶ 27, 725 N.W.2d 883. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or misinterprets or misapplies the law. *In re Rush*, 2009 ND 102, ¶ 19, 766 N.W.2d 720.

 [¶ 22] Evidence that is not relevant is not admissible. N.D.R.Ev. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.D.R.Ev. 401. Whether evidence is rele-

vant or not depends upon whether it tends to prove or disprove a fact in issue. *State v. Haugen*, 458 N.W.2d 288, 290 (N.D. 1990).

[¶ 23] We have examined *Davis v. Alaska*, 415 U.S. 308, 315–19, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (limiting cross-examination of witness precluded defendant from showing possible bias of witness), and conclude that it is not inconsistent with our analysis.

### A

 [¶ 24] Ness claims his confrontation rights were violated when the court refused to allow him to cross-examine Lundstrom about her bias, prejudice, or ulterior motives. He claims he was able to expose Lundstrom's bias through his offer of proof, showing Lundstrom knew the violation would cause Ness to lose his outfitter license for three years; there has been a large increase in outfitters in the state since Lundstrom became a game warden, and Lundstrom's father supervises outfitter businesses for the Game and Fish Department.

[¶ 25] The testimony Ness hoped to obtain from Lundstrom on cross-examination was irrelevant. There was undisputed evidence Ness killed the deer, he transported the deer to his house, he began cutting the deer up, and the deer was not tagged when Lundstrom arrived. The testimony Ness sought from Lundstrom would not help prove or disprove a fact in issue. Furthermore, Ness has failed to show how this information would show Lundstrom was biased. Ness's confrontation rights were not violated, and the district court did not abuse its discretion by refusing to allow Ness to cross-examine Lundstrom about her father's occupation and outfitters in general.

## B

[¶ 26] Ness also claims his confrontation rights were violated because he was not allowed to question Lundstrom about the tagging requirement but the State was allowed to ask her about when a reasonable hunter would tag a deer. Ness wanted to introduce photographs of hunters with deer he had found on a website and ask Lundstrom whether she believed the hunters in the pictures had violated the tagging requirement. The district court ruled Ness could inquire about Lundstrom's understanding of the immediacy requirement but he could not use the pictures because pictures of other hunters with other animals at other times were irrelevant and would not help the jury determine whether the law was broken in this case.

[¶ 27] The district court allowed Lundstrom to testify about her understanding of the tagging requirement. Ness's attorney also questioned Lundstrom about the tagging requirement on cross-examination, including asking her whether certain hypothetical situations would be violations of the tagging requirement. The court allowed Ness to cross-examine Lundstrom about her understanding of the tagging requirement, and only prohibited the use of photographs taken from a website to question Lundstrom about whether other hunters had violated the requirement. Whether other hunters had violated the tagging requirement was not relevant to this case and the district court did not abuse its discretion by excluding that evidence. Ness was allowed to cross-examine Lundstrom about the tagging requirement. We conclude Ness's confrontation rights were not violated.

## VI

[¶ 28] Ness argues the district court erred in denying his motion for a mistrial because one of the jurors had an indirect connection with Ness's property, which he contends tainted the verdict.

[¶ 29] Motions for mistrial are within the district court's discretion, and will not be reversed on appeal unless the court clearly abused its discretion or a manifest injustice would occur. *State v. Skarsgard*, 2007 ND 160, ¶ 16, 739 N.W.2d 786. Mistrial is an extreme remedy that should only be granted when there is a fundamental defect or occurrence which makes it evident further proceedings would be productive of manifest injustice. *Id.*

[¶ 30] Here, after the jury began deliberating a juror informed the court he realized his employer may have had a prior business relationship with Ness after he viewed pictures of Ness's property that were presented as evidence during the trial. The juror indicated he did not feel the possible underlying relationship between his employer and Ness would influence his impartiality. Ness moved for a mistrial, and the court denied the motion, stating the note from the juror indicated the juror was not personally involved in the possible prior business relationship, the juror did not have personal knowledge of the location, and the juror indicated it would not affect the outcome of the case.

[¶ 31] Ness has not presented any evidence the juror was personally involved in any business relationship between Ness and the juror's employer. Ness failed to present any evidence the failure to grant a mistrial resulted in a manifest injustice. We conclude the court did not abuse its discretion in denying Ness's motion for a mistrial.

## VII

[¶ 32] We conclude the tagging requirement is not unconstitutionally vague,

there is sufficient evidence to support Ness's conviction, the district court did not err in denying Ness's requested jury instructions, Ness's confrontation rights were not violated, and the court did not abuse its discretion in denying Ness's motion for a mistrial. We affirm the district court's order.

[¶33] GERALD W. VANDE WALLE, C.J., BENNY A. GRAFF, S.J., DANIEL J. CROTHERS and CAROL RONNING KAPSNER, JJ., concur.

[¶34] The Honorable BENNY A. GRAFF, S.J., sitting in place of SANDSTROM, J., disqualified.